UNITED STATES of America,
Appellee,

v.

Leon L. MILLER, Appellant.

No. 74–3242.

United States Court of Appeals,
Ninth Circuit.

July 14, 1975.
Rehearing Denied Sept. 18, 1975.

Harold R. Farrow (argued), Oakland, Cal., for appellant.

Paul G. Flynn, Asst. U. S. Atty. (argued), Los Angeles, Cal., for appellee.

OPINION

Before CHAMBERS and KENNEDY, Circuit Judges, and ENRIGHT,* District Judge.

* The Honorable William B. Enright, United States District Judge for the Southern District of California, sitting by designation.

ENRIGHT, District Judge:

Leon Miller was convicted by a jury of one count of violating 18 U.S.C. § 641, theft of government property, and two counts of violating 18 U.S.C. § 1001, making false statements on a matter within the jurisdiction of an agency of the United States. He was sentenced concurrently on the three counts. Miller's principal argument on appeal is that the funds which he was convicted of embezzling were not property of the United States. He also challenges two instructions given to the jury and the introduction into evidence by the prosecutor of a prior similar act. We find no error, and affirm the conviction.

### I. Statement of Facts

From June 1972 until some time after the trial, the appellant was the Executive Director of the Los Angeles County Comprehensive Health Planning Council (COMP–LA), a private, non-profit organization established under the laws of California and charged with implementing and overseeing a comprehensive, area-wide health and planning project in the Los Angeles area. During that period, COMP–LA received funds from a variety of sources, of which the federal government, which provided approximately 70%, was by far the largest donor. Grant funds received from the United States were approved annually, pursuant to 42 U.S.C. § 246(b), and paid on a monthly basis.

The initial COMP–LA federal grant for the year 1973 was in the amount of $345,000.00. In September 1973, the appellant, on behalf of COMP–LA, applied to the Department of Health, Education and Welfare (HEW) for an additional grant for that year of approximately $140,000.00. HEW approved the supplemental grant in the reduced amount of $85,000.00, which was to be paid over the remaining months of 1973.

In accordance with standard procedures, and after the grant had been approved, Miller submitted a document to HEW in which he stated that $45,000.00 was needed for the month of November.

On November 8, COMP–LA received a check drawn on the account of the United States in the amount of $45,000.00; a second check for $45,000.00 was received the next day. The two checks were dated one day apart. An administrative assistant showed the checks to Miller, who told her to deposit the first check and to retain the second one. The second check, received on November 9, was, in fact, a clerical error, and this fact became clear a few days later when COMP–LA received a $40,000.00 check, representing the proper balance of the $85,000.00 grant. The administrative assistant spoke to Miller again about the second check and he again told her to keep it.

In late November, Miller again was reminded of the check, and was told that an inspection team from HEW would be arriving at the COMP–LA offices in early December. On the day before the inspection was to take place, Miller obtained the check and a blank deposit slip. He deposited $20,000.00 from the check in the COMP–LA bank account, and the remaining $25,000.00 in his personal account. Within 34 days, Miller spent the entire $25,000.00.

Miller subsequently attempted to conceal the fact that he had deposited a portion of the funds in his own account. On December 5, he prepared a letter which was addressed to HEW, which stated that he was returning $25,000.00, and that the remaining $20,000.00 should be deducted from the 1974 grant award. Miller showed this letter to COMP–LA personnel, but never mailed it to HEW. In addition, Miller caused changes to be made on a financial statement covering the period ending December 31, 1973. The principal change which he made was to increase the cash on hand by $25,000.00.

HEW subsequently learned that the duplicate check was issued erroneously.

### II. The Applicability of Section 641

The appellant argues that the funds which he was charged with embezzling no longer constituted property of the

United States once they were transferred to COMP–LA. Thus, he claims that he cannot be convicted under 18 U.S.C. § 641, which pertains only to theft of property of the federal government.[1]

The United States is authorized to grant funds to comprehensive health planning organizations under 42 U.S.C. § 246. Under this legislation, four types of organizations are eligible for federal funding. The particular authorization affecting COMP–LA is contained in subsection 246(b). Miller argues that under this subsection, unlike subsections (a) and (d), there is no requirement of fiscal accountability to the federal government, and no indication of the intention of the federal government to exercise ownership or control over funds which it grants to such agencies. Therefore, according to this argument, once the check was sent to COMP–LA, it no longer constituted property of the federal government.

■ It is unnecessary to reach the issue raised by the appellant, since, regardless of the statutory authority for the grants to COMP–LA, there are two theories upon which the conviction on this count can be sustained. First, regardless of whether the funds had passed from the federal government to COMP–LA, the check itself constituted a "thing of value" of the United States, within the meaning of section 641. Second, since the check was erroneously issued, the right to the funds represented by the check did not pass from the federal government to the Council.

The check from which Miller deposited $25,000.00 in his own account was drawn on the account of the United States. "When the drawer is the Government, it is the Government's piece of paper and

the thief has stolen the property of the Government and of the person he has convinced to make payment." *United States v. Collins,* 464 F.2d 1163 (9th Cir. 1972); *see Clark v. United States,* 268 F. 329 (6th Cir. 1920). In *Collins,* the conviction under section 641 was reversed because the warrant involved did not belong to the United States, but rather was a standard warrant of the City and County of San Francisco. In the present case, the parties stipulated that the funds from the check were deposited directly into the appellant's personal account; testimony of the bank teller supports this stipulation. Accordingly, the property involved in this case, unlike that in the *Collins* case, constituted property of the United States.

The conviction also can be affirmed on the ground that the check was improperly issued by the federal government, and the property right in that check never passed to COMP–LA. It is clear that in this case an embezzlement has occurred. The only question is whether the funds were embezzled from the federal government or from some other entity, since an essential element of the offense defined by this section is "that the Government have suffered an actual property loss." *United States v. Collins, supra* at 1165. In this case it is clear that the $45,000.00 check was issued erroneously, and that accordingly the government was entitled to have the money returned. In these circumstances, we conclude that the government, at all times, retained a property interest in the money, and, accordingly, suffered an actual property loss.

### III. *The Jury Instructions*

The appellant argues that the trial court erred in instructing the jury that

---

1. That section provides:

   Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the

   United States or any department or agency thereof . . . ..
   Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both. . . .

the check was "money and a thing of value of the United States," rather than permitting the jury to resolve that issue. Whether an item is government property ordinarily is a question of law, and when the facts so establish, it is proper for the court to give such an instruction. *United States v. Jackson,* 436 F.2d 39 (9th Cir. 1970), *cert. denied,* 403 U.S. 906, 91 S.Ct. 2209, 29 L.Ed.2d 682 (1971); *United States v. Friedman,* 445 F.2d 1076, 1087 (9th Cir. 1971).

The next contention of the appellant is that the court erred by failing to instruct the jury that a "fiduciary relationship" is an essential element of the offense of embezzlement. The court gave the following instruction:

> To embezzle means to take willfully or convert to one's own use another's money or property of which the wrongdoer acquired possession lawfully by reason of some office or employment or position of trust.[2]

■ This instruction was not improper. Embezzlement has been defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Moore v. United States,* 160 U.S. 268, 269–70, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895); *Woxberg v. United States,* 329 F.2d 284, 290 (9th Cir. 1964). Section 641 is not limited to persons who come into possession of property by virtue of a particular fiduciary relationship, but rather applies to all persons, regardless of their employment. Under such a statute, it is not necessary to instruct the jury that a fiduciary relationship is an essential element of the offense of embezzlement. *See Moore v. United States, supra,* 160 U.S. at 272, 16 S.Ct. 296.

### IV. Conduct of the Prosecutor

■ The appellant contests the ruling of the trial court which permitted the prosecutor to introduce evidence of a prior or similar act. The similarity between the prior act and the act charged in Count I was sufficient to permit admission of the evidence on the issue of motive or intent of the defendant, which issue was raised by defense counsel's opening statement.

■ It is argued, however, that the appellant was prejudiced by the fact that the prosecutor did not reveal that he intended to introduce evidence relating to this prior act until after opening arguments had been made by both parties, at which time the appellant allegedly had followed tactics in reliance upon the strategy which he believed the government would follow. We know of no theory under which the prosecutor had an obligation to apprise the defense of his intention to introduce such evidence prior to the delivery of an opening statement. The appellant has not alleged that the material was covered by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that it was the subject matter of any court order compelling pre-trial disclosure, or that the prosecutor misrepresented to the defense his intention to introduce such evidence.

■ Finally, the appellant contends that the prosecutor provided defense counsel with a report of a government investigator knowing the report to be false. Although the report as originally typed may have been erroneous, handwritten corrections were interlineated before the report was provided to the defense. The claim that the turning over of this report constituted prosecutorial misconduct is without merit.

■ The appellant argues that his conviction on Counts II and III should be reversed on the ground that the letter to HEW which he prepared and the changes in the financial statement which he made did not come "within the jurisdiction of any department or agency of the United States," for purposes of 18

---

2. This instruction is taken from 1 Devitt & Blackmar, Federal Jury Practice & Instructions § 16.02 (1970).

U.S.C. § 1001. Since the appellant was sentenced to concurrent terms for all three counts, it is unnecessary for this court to dispose of the appellant's contentions as to these counts. *Jordan v. United States,* 416 F.2d 338, 346 (9th Cir. 1969), *cert. denied,* 397 U.S. 920, 90 S.Ct. 930, 25 L.Ed.2d 101 (1970).

The conviction is affirmed.