UNITED STATES of America, Plaintiff,

v.

Donna Lee WALKER, Defendant.

Crim. No. 83–8.

United States District Court,
S.D. Iowa.

May 27, 1983.

Raymond Rosenberg and Linda R. Reade, Rosenberg & Margulies, Des Moines, Iowa, for plaintiff.

Richard C. Turner, U.S. Atty., S.D. Iowa, Joseph S. Beck, Asst. U.S. Atty., Des Moines, Iowa, for defendant.

## MEMORANDUM OPINION AND ORDER

STUART, Chief Judge.

This case involves a five-count indictment charging Donna Lee Walker with violating 18 U.S.C. § 641 by making five separate withdrawals from the bank account of her deceased parents, Basil J. and Helen Ryan, of Social Security benefits which had been paid to Basil Ryan via automatic deposit after his death because the Social Security

Administration (SSA) had not been informed of his death. Defendant waived her right to a jury trial and the case was tried to the Court on May 4 and 5, 1983.

■ Section 641 states in pertinent part: "Whoever embezzles . . . or knowingly converts to his use or the use of another . . . any . . . money, or thing of value of the United States or of any department or agency thereof . . ." shall be guilty of an offense against the United States. A greater penalty is imposed by § 641 if the property exceeds $100 in value.

In each count, the government must prove beyond a reasonable doubt that: (1) the money or property described in the indictment belonged to the United States and had a value in excess of $100 at the time alleged; (2) the defendant embezzled, stole or converted such money or property to her own use or the use of another; and (3) the defendant did so knowingly and willfully with the intent to deprive the owner of the use or benefit of the money or property so taken.

The evidence establishes the last two elements and value in excess of $100 beyond a reasonable doubt as to each count. The issue is whether, under the facts of this case, the "money or property" converted by the defendant belonged to the United States.

## FINDINGS OF FACT

On December 4, 1975, Basil Ryan executed a form authorizing the automatic deposit of his monthly Social Security benefits in a joint account with his wife in the Iowa-Des Moines National Bank, account No. 335361.

Basil Ryan died May 8, 1977, his wife having died less than two months earlier. The defendant was appointed executrix of her father's estate. On May 31, 1977, defendant instructed the Iowa-Des Moines National Bank to open an account for the estate, to transfer the balance in account No. 335361 to the new estate account, and to close account No. 335361. The bank transferred the funds as instructed, leaving

account No. 335361 with a zero balance; however, the bank failed to take the internal steps necessary to formally close the account. As a result, the account was reactivated by the computer when the SSA made an automatic deposit of Social Security benefits to the account on June 2, 1977. Because it had not been informed of Basil Ryan's death, the SSA continued making such deposits each month through March 1982, when the SSA learned of Mr. Ryan's death as a result of its own investigatory procedures. The Social Security deposits were the only deposits made to account No. 335361 after May 31, 1977.

After Basil Ryan's death, William Wheatcraft, attorney for Basil Ryan's estate, received bank statements until late 1978 for both the Basil J. Ryan personal bank account and the estate bank account. The bank statements were forwarded by him to the defendant in November 1978, along with a note instructing defendant to close both accounts and distribute the proceeds to the estate beneficiaries (herself and her brothers). The bank statements for Basil Ryan's personal account clearly indicated that each deposit to that account was an automatic deposit of Social Security benefits. Beginning in early 1979, statements for both bank accounts were mailed directly to defendant.

After receiving attorney Wheatcraft's instructions and the bank statements in November 1978, defendant again instructed the bank to close the personal Ryan account, No. 335361, and transfer the balance to the estate account. The bank did transfer the balance—$5,270.40—to the estate account on November 30, 1978, but once again failed to formally close the zero-balanced account. Consequently, the personal account was again reactivated by an automatic Social Security deposit on December 1, 1978, and monthly automatic deposits continued thereafter. Subsequently, defendant transferred $2,000 from the personal account to the estate account on August 20, 1979; $1,200 on December 7, 1979; $1,000 on February 27, 1980; and $800 on March 28, 1980. These five transfers, total-

ing $10,270.40, were the only deposits to the estate account after November 29, 1978, on which date the estate account had had a balance of only $74.84. Between December 1, 1978, and April 30, 1980, defendant made five wire transfers from the estate account to her own personal bank account in New York, which is now closed, in addition to other withdrawals from the estate account. Defendant was the sole signatory on the estate account. The total amount withdrawn by the defendant from the estate account during that period was $10,242.36. The Court finds that the defendant either spent that money or distributed part of it to other persons and spent the remainder.

The Iowa-Des Moines National Bank was notified of the death of Basil J. Ryan on at least three occasions: (1) by defendant and attorney Wheatcraft on May 31, 1977, when they attempted to close the personal Ryan account and opened the estate account; (2) on December 22, 1977, when Basil Ryan's safety deposit box was drilled because the key could not be found; and (3) on November 28, 1978, when copies of the petition and inventory for the probate estates of Helen and Basil Ryan were sent to Monica Sinclair of the Iowa-Des Moines National Bank at her request.

The system by which Social Security benefits are automatically deposited to recipients' bank accounts involves electronic transfer of funds by means of computer tapes. The United States Treasury, at the direction of the Social Security Administration, delivers a tape to the Federal Reserve Bank system, which acts as Treasury's agent in completing the automatic deposits to recipients' bank accounts. The Federal Reserve system sends the appropriate tape to the particular bank through the local automatic clearing house, and the local bank makes the deposit to the individual's account by running the tape on the appropriate date.

## CONCLUSIONS OF LAW

The governing statute and the elements which the government was required to prove beyond a reasonable doubt as to each count were set out near the beginning of this opinion. As also stated earlier, the Court concludes that the government has met its burden of proving with respect to each count that:

(1) the property described in that count of the indictment had a value in excess of $100.00 at the time alleged;

(2) that Donna Walker converted that property to her own use or the use of another; and

(3) that Donna Walker did so knowingly and willfully with the intent to deprive the owner of the use or benefit of the money or property so taken.

■ During closing arguments at trial, defense counsel asserted that the indictment charged that defendant had taken "money" belonging to the United States, and that the government had not proven defendant had taken what could properly be termed "money". See Black's Law Dictionary (5th ed. 1979) at 906 (defining "money" as coins and paper currency, and *excluding* evidences of debt). Had the indictment actually been worded in such a limiting fashion, the Court would have had to give serious consideration to defendant's argument. However, the indictment actually charges that Donna Walker took "Social Security benefits, paid to Basil J. Ryan, deceased". The government did prove that the defendant took, and converted to her own use, Social Security benefits. The subsequent reference in the indictment to those benefits as "said monies" does not, in this Court's opinion, require the government to prove that the benefits were in the form of currency or coin at the time of the taking.

The remaining issue, then, is whether the Social Security benefits which had been automatically deposited in Basil Ryan's personal bank account were the property of the United States at the time the defendant took them.

■ An essential element under § 641 is that the United States suffer some actual property loss. *United States v. Fleetwood,* 489 F.Supp. 129, 132 (D.Or.1980). The question is whether the funds automatically de-

posited by the government in a deceased person's bank account "were possessed of sufficient indicia of federal ownership to satisfy that element of the offense". *Ibid.* As observed by the court in *United States v. Evans,* 572 F.2d 455, 471 (5th Cir.1978), *cert. denied,* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978), the cases that have upheld findings of a sufficient federal interest in the property at issue have generally involved *tangible* objects over which the government had either title, possession or control. However, where *intangible* assets are involved, as in this case, "the critical factor in determining the sufficiency of the federal interest ... is the basic philosophy of ownership reflected in relevant statutes and regulations." *Id.* at 472. *See also United States v. Rowen,* 594 F.2d 98, 99–100 (5th Cir.1979), *cert. denied,* 444 U.S. 834, 100 S.Ct. 67, 62 L.Ed.2d 44 (1979); *United States v. Maxwell,* 588 F.2d 568, 571–74 (7th Cir.1978), *cert. denied,* 444 U.S. 877, 100 S.Ct. 163, 62 L.Ed.2d 106 (1979).

In *United States v. Miller,* 520 F.2d 1208, 1210 (9th Cir.1975), a conviction under § 641 was affirmed on alternative grounds, one of which was that the check which the defendant had embezzled was erroneously issued by the government. Because the government had mistakenly issued a duplicate check, the court said, the government was entitled to have the money returned. The court concluded: "In these circumstances ... the government, at all times, retained a property interest in the money, and, accordingly, suffered an actual property loss." *Ibid.*

▉ Defendant argues that *Miller* is inapposite because in this case the government's deposits of funds in Mr. Ryan's account was not erroneous. Defendant apparently contends the *Miller* rationale is limited to clerical or ministerial errors. The Court cannot agree. The deposits to Mr. Ryan's account were erroneous because they were made after his death, at which point entitlement to those funds ceased under applicable Social Security regulations. *See* 20 C.F.R. § 404.311. The government would not have made those deposits had it been aware of Mr. Ryan's death, i.e., if defendant and/or the bank had informed the government of his death as they were required to do by law.

Moreover, the "philosophy of ownership reflected in relevant statutes and regulations," *Evans, supra,* confirms that the government retained a property interest in the deposits erroneously made to Mr. Ryan's account after his death. Under 20 C.F.R. § 404.501 et seq., the Social Security Administration is entitled to recover overpayments of Social Security benefits from the recipient or his estate. These regulations demonstrate that the government does assert a strong proprietary interest in overpayments such as those involved in this case.

▉ Defendant argues that the result should be different in this case because the funds were automatically deposited via electronic funds transfer, thereby becoming the property of the bank rather than the government. Defendant relies heavily on the banking regulations which govern automatic deposits of recurring government payments at participating financial institutions. *See* 31 C.F.R. Part 210. Under those regulations, which govern the relationship between the government and the participating financial institutions, if the institution credits an automatic deposit to the account of a deceased person, the financial institution is liable to the government for the total amount of the deposits thus erroneously made unless certain criteria, not present here, are met by the bank. Because of the bank's liability, defendant argues, the government has suffered no actual property loss.

The Court holds that the regulations which govern the relationship between the government and the financial institutions which agree to make automatic deposits of government payments (31 C.F.R. Part 210) do not extinguish the government's proprietary interest in overpayments of Social Security benefits which is asserted in 20 C.F.R. § 404.501 et seq. Under the latter regulations, the government retained a sufficient property interest in and control over

the deposits erroneously made to Mr. Ryan's account after his death to satisfy the government ownership element of § 641. In addition, the Court is of the opinion that the bank merely acted as a conduit for the Social Security payments to be deposited in the recipient's account. It acquired no interest in those funds.

Accordingly, the Court finds and concludes that the government has met its burden of proving beyond a reasonable doubt each element of the offenses charged in each count of the indictment, including the element of government ownership.

The defendant, in open court and on the record, waived her right to be present at the time the Court filed its written decision in this criminal case.

IT IS THEREFORE ORDERED, adjudged and decreed by the Court that the defendant Donna Lee Walker is guilty as charged in Counts 1, 2, 3, 4 and 5 of the Indictment.

IT IS FURTHER ORDERED that the defendant shall come before the Court for sentencing at the United States Courthouse in Des Moines, Iowa, at 1:00 o'clock p.m. on the 30th day of June, 1983.

IT IS FURTHER ORDERED that the appearance bond shall be continued in its present form and amount. The defendant is advised that failure to appear at the time and place as ordered could result, not only in forfeiture of the bond, but in further criminal charges.

A presentence report is ordered.