**UNITED STATES of America, Plaintiff,**

v.

**Jose I. YEJO, Defendant.**

**Crim. No. 85–0506CC.**

United States District Court,
D. Puerto Rico.

March 14, 1986.

Daniel F. López-Romo, U.S. Atty., Warren Vázquez, Asst. U.S. Atty., Old San Juan, P.R., for plaintiff.

Harvey B. Nachman, Santurce, P.R., for defendant.

## ORDER

CEREZO, District Judge.

Defendant has been charged with a thirty-nine (39) count indictment for violations to 18 U.S.C. Section 1341 (mail fraud), Section 287 (false claims) and Section 641 (conversion). The essence of the alleged criminal activity giving rise to the multi-count indictment is that defendant, a postal worker who as a result of an accident suffered while performing his duties as letter carrier became eligible to receive compensation from the Workmen's Compensation Program of the United States Department of Labor, "omit[ted] to report" his employ-

ment status upon his return to his duties as postal worker some fourteen (14) months after the accident, and continued to receive the government benefits. The government is charging separate counts under separate statutes for each of the compensation checks sent to defendant after he returned to work and allegedly became ineligible to receive them. Defendant has challenged the indictment and a superseding one, filed only to correct minor errors, in a Motion to Dismiss under Rule 12(b)(2), Fed.R.Cr.P., filed January 28, 1986 which the government has opposed. Defendant challenges the first fifteen counts as time barred and the rest of the counts as insufficient for failing to state the essential elements of the offenses charged.

The federal statute of limitations for the crimes charged provides that no one shall be prosecuted for any offense unless the indictment is found within five years next after such offense shall have been committed. 18 U.S.C. Section 3282. In the case of mail fraud charges, the period of limitations starts to run from the date of mailing. *United States v. Read*, 658 F.2d 1225, 1240 (7th Cir.1981). Since counts one through fifteen all refer to mailings made more than five years before December 18, 1985, the date the original indictment was returned, they are time barred and cannot be prosecuted. The government is mistaken in relying on *United States v. Andreas*, 458 F.2d 491 (8th Cir.1972) *cert. denied* 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89, as support for leaving these time barred events as counts in the indictment. One thing is to include in an indictment reference to acts extending beyond the statute of limitations but denoting a scheme continued into the statutory permissible period, which is what *Andreas* stands for, and another is to prosecute a defendant on time barred offenses which is what the government has attempted to do in these counts. The first fifteen counts of the indictment, counts one through fifteen, are hereby DISMISSED and stricken from the indictment.

With respect to the other mail fraud charges, counts sixteen through twenty-three, defendant contends that there is no violation to 18 U.S.C. Section 1341 because the allegations do not reveal that defendant used the mails or devised any scheme to "cause" its use. At the stage, and within the procedural context, that this issue is presented to us, we are limited to examining whether the indictment is sufficient to give defendant adequate information as to the charges and elements of the offense against which he must defend himself. *Russell v. United States*, 369 U.S. 749, 763, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962); *see also Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *United States v. Tomasetta*, 429 F.2d 978, 979 (1st Cir.1970). Counts two through twenty-three of the challenged indictment contain an introductory paragraph expressly incorporating to those counts the allegations of the first five paragraphs of count one which mention that during the period of June 14, 1974 up to and including March 24, 1982, defendant "devised and intended to devise a scheme and artifice to defraud and obtain money by means of false and fraudulent pretenses, representation and promises from the office of the Workmen's Compensation Program of the U.S. Department of Labor ... well knowing at this time that the pretenses and representation and promises would be and were false when made...." The indictment states that the scheme was to "defraud for the purpose of obtaining workmen's compensation benefits" and goes on to describe the scheme as follows:

3. JOSE I. YEJO, the defendant herein, became elegible [sic] to receive workmen's compensation benefits as a result of an accident suffered on May 9, 1973, while performing his duties as a letter carrier in the United States Postal Service.

JOSE I. YEJO became ineligible [sic] to receive the aforementioned benefit upon returning to work at his former position on July 13, 1974, as a mail carrier without any wage loss and occupying the same status he had before the accident.

4. It was further part of the scheme and artifice to defraud, that after JOSE I. YEJO returned to work at the U.S. Postal Service on July 12, 1974, said defendant did omit to report his employment status (Form CA–1033) to OWCP–USDL which was requested of him on September 30, 1974, thus continuing to receive workmen's compensation benefit checks.

5. It was further part of the scheme and artifice that JOSE I. YEJO, the defendant herein, did for a second time omit to report employment and pay status which was requested of him on April 20, 1976, thus continuing to receive workmen's compensation checks when in fact he had returned to work with full pay.

It was further part of the scheme and artifice that JOSE I. YEJO, the defendant herein, for a third time did omit to report employment and pay status information (Form CA–1032, revision of CA–1033) which was requested of him by OWCP–USDL on November 28, 1977, thus continuing to receive workmen's compensation benefit checks.

The indictment continues to narrate another such omission as a sixth paragraph, however, for reasons unknown, the indictment only incorporates up to the fifth paragraph.

The mail fraud statute reads in part:

Whoever, having devised ... any scheme ... to defraud, ... for the purpose of executing such scheme ... or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter ... or knowingly causes to be delivered by mail....

18 U.S.C. Section 1341. The two key elements which make up the crime charged in the statute are the formation of a scheme with intent to defraud and the use of the mails in furtherance of that scheme. *United States v. Keane*, 522 F.2d 534, 544 (7th Cir.1975). In *United States v. Contenti*,

735 F.2d 628 (1st Cir.1984) the court indicated that something may be "caused" to be delivered by mail in violation of 18 U.S.C. Section 1341 if one "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where he would reasonably foresee that the use of mails would result" *id.* at 631. The court mentioned that the statute may be violated even though the accused did not mail anything, or even if the mailed item did not disclose a fraudulent intent, as long as the mailing be a part or incident to some essential step in the execution of the scheme, *id., see also United States v. Rendini,* 738 F.2d 530, 533–34 (1st Cir.1984); *United States v. McNeill,* 728 F.2d 5, 14–15 (1st Cir.1984); *United States v. Martin,* 694 F.2d 885, 890 (1st Cir.1982). It has been held that a fraudulent representation within the meaning of section 1341 may be perpetrated through willful concealment of material facts of which there is a duty to report. *See United States v. Allen,* 554 F.2d 398, 410 (10th Cir.1977); *United States v. Bush,* 522 F.2d 641, 646 (7th Cir.1975) *cert. denied* 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); *Keane,* 522 F.2d at 546.

■ Although the indictment in this case is not a model of clarity, for instance, from the schematic description of the fraudulent conduct we cannot determine whether defendant's failure to inform the compensation agency consisted in failing to even send the form or in sending it but without filling out certain blanks, *cf. United States v. Mattox,* 689 F.2d 531 (5th Cir.1982) (federal employee convicted of 18 U.S.C. Sections 1001 and 1920 for failing to answer certain questions by leaving them in blank or inserting "N/A" in a form similar to the one herein); *United States v. Dorey,* 711 F.2d 125 (9th Cir.1983) (under 18 U.S.C. 1001 and 1920 conviction reversed because government failed to prove postal worker receiving disability benefits was required to file a report informing change in employment status), we cannot conclude that these counts, easily clarified through a bill of particulars, are fatally defective. The description of the scheme as narrated in count one sufficiently apprises defendant of the essential wrongdoing, that is, his failure to report the change in his employment status while he continued to receive the compensation checks. This description also contains a rough depiction of the elements of the mail fraud offense in that they present the "causing" of mailings through a scheme of willful concealment of information which he was required to report. It is fair to require the accused to defend himself based on how these charges are described in count one of the indictment. *United States v. Conlon,* 628 F.2d 150, 155 (D.C.Cir.1980); *United States v. Barbato,* 471 F.2d 918, 921 (1st Cir.1973). Whether the evidence presented reveals or not the necessary criminal intent, or the existence of the elements of mail fraud in the particular circumstances of this case, is another matter that we cannot at this moment solve, since our inquiry is limited to the sufficiency of the indictment. *See United States v. London,* 550 F.2d 206, 210 (5th Cir.1977). Defendant's motion to dismiss counts sixteen through twenty-three is DENIED.

■ Counts twenty-four through thirty-one are allegedly insufficient because there is no indication that defendant "claimed" anything from the federal government but that he merely received and cashed checks made and sent to him due to some administrative error. Defendant contends that in deference to the doctrine of restrictive criminal statute interpretation, *see e.g. Zaimi v. United States,* 476 F.2d 511, 523–25 (D.C.Cir 1973), we should not construe the language in 18 U.S.C. Section 287 that "[w]hoever makes or presents ... any claim upon or against the United States" to include and criminally punish defendant's passive receipt of compensation checks issued erroneously. He challenges counts thirty-two through thirty-nine as insufficient for the act of cashing the checks erroneously issued to him cannot be termed a criminal conversion because the monies in question did not belong to the United States since the issuing of a check, as alleged in the indictment, implies that the

government parted with title to the funds. However, we need not decide the difficult question of whether the conduct charged was a claim as proscribed by 18 U.S.C. Section 287, *compare Scolnick v. United States,* 331 F.2d 598 (1st Cir.1964) (endorsing and collecting government checks known to have been issued erroneously was presentation of claim within scope of the False Claims Act) *with United States v. Cohn,* 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616 (1926) (in interpreting predecessor statute to False Claims Act and 18 U.S.C. Sections 287 and 1001, Supreme Court defined claim as a "demand of some matter as of right, made by one person upon another to do or forbear to do some act or thing as a matter of duty"), or whether the cashing of the checks was a conversion within the meaning of 18 U.S.C. Section 641, *compare United States v. Alessio,* 439 F.2d 803 (1st Cir.1971) (in larceny of government property case issue of whether petty cash allegedly removed was property of government employee who was merely indebted to the government therefor, was crucial to establish the case) *with United States v. Walker,* 563 F.Supp. 805 (D.Io.1983) (court found that government owned Social Security checks erroneously issued to recipient who had lost entitlement to them because of his death, and daughter could be prosecuted and convicted for violation of 18 U.S.C. Section 641 for using these funds), for these counts must be dismissed on other grounds. The failure to expressly incorporate the description of the scheme to defraud by omission makes them insufficient. *See United States v. Huff,* 512 F.2d 66, 69 (5th Cir.1975); *Davis v. United States,* 357 F.2d 438, 440 N. 2 (5th Cir.1966) *cert. denied* 385 U.S. 927, 87 S.Ct. 284, 17 L.Ed.2d 210; *United States v. Kilroy,* 523 F.Supp. 206, 210 (E.D.Wisc.1981). Left without count one, an important peg of the criminal charges in these counts is lacking and what remains is little but conclusory statements which are insufficient to inform the defendant with, at least, minimal particularity of what conduct constituted the alleged false claim or the conversion in order for him to prepare an adequate

defense. *See United States v. Murphy,* 762 F.2d 1151, 1154 (1st Cir.1985). As such, counts twenty-four through thirty-one and thirty-two through thirty-nine are insufficient and are hereby DISMISSED and stricken from the indictment.

SO ORDERED.