**UNITED STATES of America, Plaintiff,**

v.

**Jerold HOWARD, Defendant.**

**No. CR–1–91–13.**

United States District Court,
S.D. Ohio, W.D.

March 26, 1992.

John DiPuccio, Office of U.S. Atty., for U.S.

William C. Lange, Cincinnati, Ohio, for defendant.

## ORDER OF ACQUITTAL

SPIEGEL, District Judge.

Mr. Howard was charged in a one count indictment with theft of government funds in violation of 18 U.S.C. § 641. The trial in this matter commenced on March 25, 1992. At trial, the parties stipulated to the following: (1) Jerold Howard's mother, Hazel Pegan, is a resident of the Madeira Nursing Home; (2) Mr. Howard agreed to be responsible for Mrs. Pegan's expenses at the nursing home; (3) Mrs. Pegan receives monthly social security benefits that are direct deposited into her personal checking account; (4) Between May, 1989 and May, 1990, Mrs. Pegan received social security benefits totalling approximately $8,000; (5) From June, 1989 to May, 1990, no payments were made to the Madeira Nursing Home for Mrs. Pegan's care; (6) During that same period, Mr. Howard withdrew funds in excess of $5,000 from Mrs. Pe-

gan's checking account for his own personal use by signing Mrs. Pegan's name to personal checks; (7) The United States suffered no pecuniary loss as a result of Mr. Howard's activity. Government Ex. 6.

At the conclusion of the government's case, the defendant moved for acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. The defendant claims that the government did not and cannot prove that the money allegedly stolen was "money ... of the United States" within the meaning of 18 U.S.C. § 641.

Because the facts surrounding ownership of the funds are not in dispute, the Court must determine whether the funds in Mrs. Pegan's account constituted "money ... of the United States." *See United States v. Gavin*, 535 F.Supp. 1345 (W.D.Mich.1982). Although no court has clearly resolved this issue regarding social security payments direct deposited into the account of a proper social security recipient, at least one court has concluded that, regarding federal funds:

> [M]oney remains "money ... of the United States" within the meaning of § 641 even after being deposited in the bank account of the grantee, *see United States v. Largo*, 775 F.2d 1099, 1101 (10th Cir.1985) (per curiam), *cert. denied*, [474] U.S. [1105], 106 S.Ct. 891, 88 L.Ed.2d 925 (1986), and even if commingled with non-federal funds, *see United States v. Von Stephens*, 774 F.2d 1411, 1413 (9th Cir.1985) (per curiam); *United States v. Mitchell*, 625 F.2d 158, 160–61 (7th Cir.), *cert. denied*, 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980), so long as the government "exercises supervision and control over the funds and their ultimate use." *United States v. Von Stephens*, 774 F.2d at 1413; *accord United States v. Bailey*, 734 F.2d 296, 300–01 (7th Cir.), *cert. denied*, 469 U.S. 931, 105 S.Ct. 327, 83 L.Ed.2d 263 (1984); *United States v. McIntosh*, 655 F.2d 80, 84 (5th Cir.1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1450, 71 L.Ed.2d 662 (1982).

*Hayle v. United States*, 815 F.2d 879, 882 (2d Cir.1987).

*Hayle* involved Medicare funds, Medicaid funds, and Public Health Service grants deposited into the account of the South Brooklyn Health Center. However, the court's decision in *Hayle* is applicable to the case at bar. Where the government no longer has supervision or control over funds or the ultimate use of the funds, and no longer has any pecuniary interest in the funds, it would grossly distort the English language to call those funds "money ... of the United States." In addition, the rule of lenity requires that any ambiguities in the criminal law be resolved in favor of the accused. Accordingly, we conclude that funds are "money ... of the United States" within the meaning of 18 U.S.C. § 641 only where the government retains a pecuniary interest in the funds, or maintains control over the funds or their ultimate use.

In the case at bar, federal funds were direct deposited into Mrs. Pegan's personal checking account in the form of social security benefits. The deposits were made correctly, and Mrs. Pegan was entitled to the monthly benefits. Although social security benefits are not subject to process to satisfy the recipient's debts to third parties (*see* 42 U.S.C. § 407), a social security recipient is in no way restricted in the way he or she chooses to spend the funds once they are properly received. That is, Mrs. Pegan could, once the social security benefits were properly deposited into her account, use that money in any way she chose. The government no longer exercises any supervision or control over the funds or the ultimate use of the funds (apart from prohibiting their attachment by third parties) nor does it retain any pecuniary interest in the money. In fact, counsel for the government stipulated, "There was no loss to the United States" as a result of Mr. Howard's activity. Government Ex. 6 at 2. Accordingly, we conclude that the funds in Mrs. Pegan's account did not constitute "money ... of the United States" as used in 18 U.S.C. § 641.

Counsel for the government directs the Court's attention to *United States v. Walker*, 563 F.Supp. 805 (S.D. Iowa 1983). However, *Walker* is inapposite to the case at bar.

In *Walker*, the social security recipient, Mr. Ryan, was deceased. Because neither the bank nor the recipient's daughter reported Mr. Ryan's death to the Social Security Administration, social security benefits continued to be direct deposited into Mr. Ryan's account. Mr. Ryan's daughter, Donna Walker, then withdrew the money from Mr. Ryan's account and used it for her own benefit. *Id.* at 806–808. The court concluded that the money in Mr. Ryan's account belonged to the United States for the purposes of 18 U.S.C. § 641.

The court based its decision in *Walker* on two factors. First, the benefits were erroneously deposited into Mr. Ryan's account because the Social Security Administration was not informed of Mr. Ryan's death. *Id.* at 808–09. The court stated, "The deposits to Mr. Ryan's account were erroneous because they were made after his death, at which point entitlement to those funds ceased under applicable Social Security regulations. *See* 20 C.F.R. § 404.311." *Id.* at 809. Second, the government retained an interest in the funds erroneously deposited in Mr. Ryan's account because, "Under 20 C.F.R. § 404.501 et seq., the Social Security Administration is entitled to recover overpayments of Social Security benefits from the recipient or his estate." *Id.*

In the case at bar, all parties agree that the benefits were properly deposited into Mrs. Pegan's account. The parties further stipulate that "[t]here was no loss to the United States." Government Ex. 6 at 2. Therefore, unlike the funds in Mr. Ryan's account in *Walker*, the funds in Mrs. Pegan's account did not constitute "money ... of the United States."

Because this Court concluded that the money in Mrs. Pegan's account was not "money ... of the United States" for purposes of 18 U.S.C. § 641, we must further conclude that the government cannot establish an essential element of the crime charged against Mr. Howard, i.e., that the money Mr. Howard allegedly stole was government money. Accordingly, the defendant's motion for acquittal must be

granted. The Court hereby orders the entry of judgment of acquittal on the charge against Mr. Howard pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure.

SO ORDERED.