**UNITED STATES of America, Plaintiff,**

v.

**Jolaine SAVAREE, Defendant.**

No. 94–CV–0478A.

United States District Court,
W.D. New York.

March 18, 1997.

William J. Gillmeister, U.S. Atty., Buffalo, NY, for Plaintiff.

Herbert L. Greenman, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY, Ralph C. Lorigo, Law Offices of Ralph C. Lorigo & Robert Varis, West Seneca, NY, for Defendant.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Hugh B. Scott pursuant to 28 U.S.C. § 636(b)(1)(B), on February 16, 1996. On February 7, 1997, Magistrate Judge Scott filed a Report and Recommendation recommending that plaintiff's motion for partial summary judgment be granted and that defendant's cross-motion to dismiss and for partial summary judgment be denied.

The Court having carefully reviewed the Report and Recommendation, the record in this case, as well as the pleadings and materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Scott's Report and Recommendation, plaintiff's motion for partial summary judgment is granted and defendant's cross-motion to dismiss and for partial summary judgment is denied. The case is re-

ferred back to Magistrate Judge Scott for further proceedings.[1]

IT IS SO ORDERED.

### Report and Recommendation

SCOTT, United States Magistrate Judge.

Presently before the Court is the plaintiff's motion for partial summary judgment (Docket # 14) and defendant's cross-motion for partial summary judgment and to dismiss (Docket # 19).[1]

### Background

This is a civil action filed pursuant to the False Claims Act, 31 U.S.C. § 3729 et seq. (the "FCA"). The operative facts are not in dispute. The defendant was the owner and operator of a group home known as Elm Arches, located in the City of Buffalo. (See Amended complaint, hereafter "Complaint", at ¶ 5). From 1983 until his death on February 11, 1989, an individual named Paul Russell resided at Elm Arches. Mr. Russell received benefits from the Railroad Retirement Board, ("RRD"), which were deposited electronically into Mr. Russell's account with Goldome Bank. (Complaint at ¶¶ 6–7; Affidavit of William J. Gillmeister, Esq., submitted in support of government's motion, ¶¶ 3–4; and Plaintiff's Counter–Statement of Material Facts, ¶ 3, attached to Plaintiff's motion).[2] About one year before Mr. Russell's death, Ms. Savaree was appointed his conservator by Erie County Court, and thus had access to his funds. (Complaint at ¶¶ 8–9). Subsequent to Mr. Russell's death in 1989, the RRB continued to pay benefits to him into his bank account until September of 1993, when it apparently learned of his death. (Complaint at ¶ 10).

The over-payment into Mr. Russell's account amounted to $26,375.46 (Complaint at ¶ 11). The government alleges that following Mr. Russell's death, Ms. Savaree wrote checks against Mr. Russell's private account, utilizing the funds erroneously deposited by the RRB. (Id.)

The government sets out three causes of action in its amended complaint. First, it alleges that the defendant is liable to the government for the full amount paid to Mr. Russell's account following his death. This cause of action is apparently based in common law, either conversion, unjust enrichment, moneys had and received or fraud. Second, the government states Ms. Savaree is liable for treble damages and civil penalties pursuant to the FCA, 31 U.S.C. § 3729(a). Finally, in its third cause of action, the government seeks punitive damages because, it alleges, each check written on Mr. Russell's account required a material misrepresentation that Mr. Russell was alive, and that such conduct was wanton.

The government has filed a motion for partial summary judgment asking the court to declare that checks written by Ms. Savaree were "claims" for purposes of the FCA. The defendant has filed a cross-motion seeking a dismissal of the second and third causes of action because they fail to plead common law fraud or the necessary elements under the FCA with sufficient particularity. Also, the defendant seeks partial summary judgment on the government's second cause of action, arguing that the acts as alleged do not constitute a violation of the FCA.

### Discussion
#### Standard of Review

Summary judgment is appropriate where there are no issues of material fact in dis-

---

1. The Court notes that the Report and Recommendation contains a typographical error at footnote 2. Footnote 2 states that Mr. Russell's will was dated January 18, 1998. That should read January 18, 1988.

1. This matter was originally referred by Hon. Richard J. Arcara to Magistrate Judge Edmund F. Maxwell under 28 U.S.C. § 636(b)(1)(A) and (b)(1)(B). The instant motions were initially presented to Magistrate Judge Maxwell, who heard oral argument by counsel with respect to the motions. Subsequent to the oral argument, but prior to the issuance of a Report and Recommen-

dation on the motions, the referral in this matter was transferred to the undersigned. Thus, this Report & Recommendation is based solely on the respective papers submitted by the parties.

2. Ms. Savaree was also the sole beneficiary under Mr. Russell's will of January 18, 1998. (See Defendant's Memorandum of Law, p. 4, n. 3). Ms. Savaree was appointed Mr. Russell's conservator in January of 1988, but the papers do not reveal if this was before or after the will was drawn.

pute, and the moving party is entitled to judgment as a matter of law. See *Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 188 (2nd Cir.1992) citing *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). The non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact". *Lendino v. Trans Union Credit Information, Co.*, 970 F.2d 1110, 1112 (2nd Cir.1992), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material:

> [w]hen its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party".

*General Electric Company v. New York State Department of Labor*, 936 F.2d 1448, 1452 (2nd Cir.1991), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The non-moving party must come forward with enough evidence to support a jury verdict... and the... motion will not be defeated merely... on the basis of conjecture or surmise". *Trans Sport*, 964 F.2d at 188, quoting *Bryant v. Maffucci*, 923 F.2d at 982. If undisputed material facts are properly placed before the court by the moving party, those facts will be deemed admitted, unless they are properly controverted by the non-moving party. *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2nd Cir.1992), citing *Dusanenko v. Maloney*, 726 F.2d 82 (2nd Cir.1984).

### The False Claims Act

The parties dispute whether the alleged actions of Ms. Savaree constitute a "claim" within the meaning of the FCA. Section 3729 reads in relevant part as follows:

  (a) Liability for certain acts.—Any person who

    (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

    (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government is liable to the United States Government for a civil penalty of not less than \$5,000 and not more than \$10,000, plus 3 times the amount of damages which the Government sustains... [3]

  (b) knowing and knowingly defined.—For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information:

    (1) has actual knowledge of the information;

    (2) acts in deliberate ignorance of the truth or falsity of the information; or

    (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

  (c) Claim defined.—for purposes of this section, "claim" includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

By the instant motion, the plaintiff asks the Court to determine whether or not the defendant's conduct satisfied the "claim" element required under the FCA as a matter of law so "that the parties can proceed to trial with a settled understanding of what is at stake ...." See Plaintiff's Memorandum of Law, dated August 18, 1995, at page 2. The plaintiff argues, of course, that the defen-

---

**3.** There are seven different categories of false claims enumerated in the statute. The government does not specifically identify which subsection applies in its complaint or its initial moving papers, referring only to § 3729(a). The parties seemed to initially focus on subsection (a)(2). However, in its reply papers to the defendant's cross-motion, the government identified subsections (a)(1) & (2) as the part of the law violated.

dant's conduct does constitute a "claim" under the FCA. The defendant argues that the presentation of a check on a bank account under the circumstances in this case is not a "claim" under the FCA and that she is entitled to summary judgment on this ground.

### Is a Check a Claim

■ The primary issue to be decided at this time is whether, under the circumstances of this case, the presentation of a check for payment is a claim under the FCA. For the reasons stated below, the Court finds that the presentation of a check for payment under the circumstances in this case constitutes a "claim" for the purposes of the FCA.

In *United States v. McLeod,* 721 F.2d 282 (9th Cir.1983), the court ruled that cashing mistakenly issued checks, thereby causing the government to issue new checks to the rightful payee, is within purview of the FCA. The *McLeod* court relied upon the Supreme Court's refusal to accept a restrictive definition of what constitutes a "claim" under the FCA in *United States v. Neifert–White,* 390 U.S. 228, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968). In *Neifert–White,* a dealer issued false invoices which overstated the purchase price of grain bins sold to farmers so that the farmers could use those invoices in support of applications for federal loans. The government subsequently sued the dealer to recover statutory forfeitures under the FCA. Similar to the defendant's argument in the instant case, the dealer in *Neifert–White* took the position that the term "claims" as used in the FCA must be read in its narrow sense to include only a demand based upon the government's liability to the claimant. *Neifert–White,* 390 U.S. at 230, 88 S.Ct. 959. The Court rejected this argument stating:

that the False Claims Act should not be given the narrow reading that respondent urges. This remedial statute reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money. We believe the term 'claims,' as used in the statute, is broad enough to reach the conduct alleged by the Government in its complaint.

*Neifert–White,* 390 U.S. at 233, 88 S.Ct. 959. See also *United States v. Fowler,* 282 F.Supp. 1 (E.D.N.Y.1968), wherein the court also rejected a narrow interpretation of the FCA, stating: "the debates at the time of the Act's original enactment in 1863 suggest that it was intended to reach all types of fraud, without qualification, that result in financial loss to the Government." *Fowler,* 282 F.Supp. at 2, citing *Neifert–White.*

■ The circumstances in the instant case provide an even more compelling argument that the defendant's conduct constituted a "claim" under the FCA than those present in *Neifert–White.* Here, the defendant directly received the money deposited by the government in Mr. Russell's account by allegedly writing the checks. In *Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), the Supreme Court "recognized that the fact that a false claim against the United States passes through the hands of a third party on its way from the claimant to the United States does not release the claimant from culpability under the Act." *Tanner,* 483 U.S. at 129, 107 S.Ct. 2739. Analogously, in the instant case, the fact that the check written by the defendant passed through the bank as a claim against government funds (the RRB deposits into Mr. Russell's account after his death) [4] does not insu-

---

4. A retirement annuity of the kind Mr. Russell received ends with the death of the annuitant. See 45 U.S.C. § 231d(c)(1) ("An individual's entitlement to an annuity...shall end with the month preceding the month in which he dies."). Any money deposited after that must, by operation of law, belong to the government. citing *United States v. Bornstein,* 423 U.S. 303, 309, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976) and *U.S. ex rel. Marcus v. Hess,* 317 U.S. 537, 541–45, 63 S.Ct. 379, 87 L.Ed. 443 (1943). In *United States v. Walker,* 563 F.Supp. 805, 809 (S.D.Iowa 1983), the court ruled that the government has a proprietary interest in money erroneously deposited

in a deceased social security recipient's accounts. The court ruled:

The deposits to [the deceased's] account were erroneous because they were made after his death, at which point entitlement to those funds ceased under applicable regulation.... [T]he Social Security Administration is entitled to recover overpayments of Social Security Administration benefits from the recipient or his estate. These regulations demonstrate that the government does assert a strong proprietary interest in overpayments such as those involved in this case.

late the defendant from accountability under the FCA.

Based on the above, the Court finds that the presentation of a check for payment under the circumstances in this case constitutes a "claim" for the purposes of the FCA.

### Motion to Dismiss

The defendant has also moved to dismiss the second and third counts of the complaint arguing that the government has not complied with Fed.R.Civ.Proc.9(b), which reads:

> (b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

Rule 9(b) applies to actions brought under the FCA. See *Gold v. Morrison–Knudsen Co.*, 68 F.3d 1475 (2nd Cir.1995); *United States v. Napco Intern., Inc.*, 835 F.Supp. 493 (D.Minn.1993) and *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F.Supp. 1055, 1058 (S.D.Ga.1990).

In the Second Circuit, to properly plead a claim of fraud to satisfy Rule 9(b): such allegations must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1128 (2nd Cir.1994) quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2nd Cir.1993). The plaintiffs must allege facts that give rise to a strong inference of fraudulent intent...(which)...may establish either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2nd Cir.1995) (citations and internal quotations omitted).

Based on the four criteria set out in *Shields*, the government has met its burden. Requirements one, two and four have been well satisfied, as the complaint alleges the statements alleged to have been fraudulent, the speaker and why the statements were fraudulent. With respect to the third requirement, of where and when the fraudulent statement has been made, the complaint is sufficiently pled to apprise the defendant of the challenged conduct and where and when the statements were made. The rule "does not require plaintiffs to plead extensive facts. It only required that plaintiffs plead the circumstances of fraud". *Gardner v. Investors Diversified Capital, Inc.*, 805 F.Supp. 874, 876 (D.Colo.1992). It has been noted that the purpose of the rule is threefold:

> to provide a defendant with fair notice on the basis of the plaintiff's claim, to protect a defendant's reputation from groundless accusations of fraud, and to prevent strike suits brought for settlement value.

*Jeff Isaac Rare Coins, Inc. v. Yaffe*, 792 F.Supp. 13, 15 (E.D.N.Y.1992) (internal quotations omitted).[5]

In sum, the present complaint is pled with sufficient particularity pursuant to Rule 9(b).

### Conclusion

For the reasons set forth above, it is my recommendation:

1. That Plaintiff's Motion for Partial Summary Judgment (Docket # 14) be **GRANTED**; and;

2. That Defendant's Cross–Motion to Dismiss and for Partial Summary Judgment (Docket # 19) be **DENIED**.

Pursuant to 28 USC § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days**

---

5. Judge Glasser, in deciding *Jeff Isaac* stated, "[Rule] 9(b) particularity is much like obscenity, legally speaking: 'I know it when I see it'" Id., quoting *United States v. Rivieccio*, 661 F.Supp. 281, 290 (E.D.N.Y.1987) and *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring).

after receipt of a copy of this Report & Recommendation in accordance with 28 USC § 636(b)(1), Fed.R.Civ.P. 72(b) and WDNY Local Rule 72(a)(3).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d Cir.1995); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See *Paterson–Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72(a)(3) may result in the District Court's refusal to consider the objection.*

So ordered.

Feb. 7, 1997.