**UNITED STATES of America, Plaintiff,**

**v.**

**Jasper FLEETWOOD, Defendant.**

**Crim. No. 79–202.**

United States District Court,
D. Oregon.

April 29, 1980.

James Coon of Sobel & Coon, Portland Or., for defendant.

Asst. U. S. Attys. Peter Robinson and Ronald Hoevet, Portland, Or., for United States.

## OPINION

FITZGERALD, District Judge.

Defendant Jasper Fleetwood was tried and convicted on three counts of violation of 18 U.S.C. § 641[1] for concealing and retaining stolen United States Savings Bonds and Freedom Share Notes.[2] He now moves for a judgment of acquittal contending: (1) prosecution was not brought within the applicable five year statute of limitations; and (2) the stolen Savings Bonds and Notes were not "a thing of value of the United States" within the meaning of 18 U.S.C. § 641.[3] Fleetwood's motion presents

---

1. 18 U.S.C. § 641 reads as follows:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

2. A total of 110 Series E United States Savings Bonds and 39 Freedom Share United States Savings Notes (collectively the "bonds") with an aggregate face value of $4,475 were illegally retained. The bonds were stolen in 1970 from the possession of several private owners. The stolen bonds, which were replaced by the government, were never cashed.

3. These issues were originally raised during trial but were denied with leave to renew them at the completion of trial. Following the jury's verdict the motion was renewed, further briefing was required, and argument was held. In the interim Fleetwood has been sentenced to two years imprisonment and three years proba-

important questions concerning the nature and scope of 18 U.S.C. § 641.

## I. *THE STATUTE OF LIMITATIONS*

■ The statute of limitations for violations of 18 U.S.C. § 641 is five years.[4] Evidence at trial revealed that Fleetwood was in possession of the bonds on March 31, 1979, and that the bonds were stolen during 1970. No evidence whatsoever was produced to show when he first received the bonds. Fleetwood, therefore, argues that the government has failed to carry its burden[5] to prove that a crime was committed within the statute of limitations.

The government contends, however, that the crime charged is a continuing offense. If so, the statute of limitations would begin to run from March 31, 1979, the last day all elements of the offense were present. The government relies on *von Eichelberger v. United States*, 252 F.2d 184 (9th Cir. 1958). In that case the defendant was charged with illegal possession of firearms. In rejecting his contention that the statute of limitations barred prosecution, the court observed:

> It will be noted that the essence of the offense as charged in the counts of the indictment now under consideration is *possession*. Therefore it seems clear that the offense was a continuing one which began on the date the guns were received by von Eichelberger and continued to December 5, 1956, the date set forth in the indictment. Present possession of a firearm is prohibited. [emphasis in original].

252 F.2d at 185.

Since *von Eichelberger*, the Ninth Circuit has continued to apply the continuing crime doctrine to crimes where the "essence of the offense" is possession. *Cf. D'Argento v. United States*, 353 F.2d 327, 335 (9th Cir. 1965), *cert. denied*, 384 U.S. 963, 86 S.Ct. 1591, 16 L.Ed.2d 675 (1966) (18 U.S.C. § 659); *See also United States v. Tyler*, 466 F.2d 920, 923 (9th Cir.), *cert. denied*, 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972).

Fleetwood argues that *von Eichelberger, D'Argento*, and *Tyler* all involved statutes other than section 641. He relies upon *United States v. Mendoza*, 122 F.Supp. 367 (N.D.Cal.1954). In *Mendoza*, which is precisely on point with the present case, the court held that section 641 was not a continuing offense. Additionally, Fleetwood relies upon the statutory rule of construction articulated in *Toussie v. United States*, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970);

> [We] have stated before "the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose,' *United States v. Scharton*, 285 U.S. 518, 522 [52 S.Ct. 416, 417, 76 L.Ed. 917] (1932)." *United States v. Habig*, 390 U.S. 222, 227 [88 S.Ct. 926, 929, 19 L.Ed.2d 1055] (1968). We have also said that "[s]tatutes of limitations normally begin to run when the crime is complete." *Pendergast v. United States*, 317 U.S. 412, 418 [63 S.Ct. 268, 270, 87 L.Ed. 368] (1943); *See United States v. Irvine*, 98 U.S. 450, 452 [25 L.Ed. 193] (1879). And Congress has declared a policy that the statute of limitations should not be extended "[e]xcept as otherwise expressly provided by law." 18 U.S.C. § 3282. These principles indicate that the doctrine of continuing offenses should be applied only in limited circumstances since . . . "[t]he tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term." [citations omitted].

*Id.* at 115, 90 S.Ct. at 860. Thus, defendant argues that the offenses enumerated in section 641 should not be deemed continuing.

The *Toussie* court, however, also went on to say:

---

tion with the sentence suspended pending disposition of these issues.

**4.** 18 U.S.C. § 3282.

**5.** *Az Din v. United States*, 232 F.2d 283, 287 (9th Cir.), *cert. denied*, 352 U.S. 827, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956).

These considerations do not mean that a particular offense should never be construed as a continuing one. They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.

*Id.* at 115, 90 S.Ct. at 860. As the *von Eichelberger* court indicated, the nature of a crime such as concealing and retaining stolen property, where possession is the essence of the offense, is such that Congress must have intended it be treated as a continuing offense. It should be noted as well that *Mendoza* was decided prior to *von Eichelberger* and the line of authorities following that case. I conclude that the offenses of which defendant was found guilty are continuing offenses involving illegal possession of property, and prosecution was not barred by the statute of limitations.

## II. *WHETHER THE SAVINGS BONDS WERE THE PROPERTY OF THE UNITED STATES*

■ Section 641 of Title 18 of the United States Code is applicable only where the property at issue is "any record, voucher, money or thing of value of the United States . . . or any property made or being made under contract for the United States . . ." It is an essential element of a crime charged under this section that the government suffer some actual property loss.[6] *United States v. Collins,* 464 F.2d 1163, 1165 (9th Cir. 1972). The critical question is whether the bonds in question, having been stolen from the possession of private citizens, still were possessed of sufficient indicia of federal ownership to satisfy that element of the offense. *See United States v. Evans,* 572 F.2d 455 (5th Cir. 1978).[7]

As observed in *United States v. Johnson,* 596 F.2d 842, 846 (9th Cir. 1979), "the decisions which have upheld convictions under § 641 have generally involved instances in which the government had either title to, possession of, or control over the tangible objects involved." *See also United States v. Evans, supra; United States v. Farrell,* 418 F.Supp. 308, 310–11 (M.D.Pa.1976). The element of possession is clearly inapplicable here as the bonds in question were stolen from private citizens.

■ The element of control is likewise inapplicable. Presence of control sufficient to show a federal interest depends upon the supervision over the property contemplated and manifested on the part of the government as reflected in the relevant statutes and regulations. *United States v. Johnson, supra,* at 846; *United States v. Evans, supra,* at 472. Consistent with 31 U.S.C. § 757c, regulations have been enacted concerning savings bonds.[8] The regulations essentially control issuance and redemption of the bonds. As such, they reveal a far lesser degree of supervision and control by the government than was present in those cases

6. The jury was instructed that one of the essential elements of the offense was "that property of the United States or any department or agency thereof was stolen."

7. The legislative history on this issue offers little assistance. As originally enacted in 1875, the statute required the property to have been "embezzled, stolen, or purloined *from the United States.*" 18 Stat. 479 (emphasis added). In 1909 the "from the United States" requirement was deleted, apparently to make clear that the statute would apply where property was stolen from other persons who held property of the United States. 42 Cong.Rec. 786. In 1918 a parallel provision, covering stealing but not receiving, was enacted covering "property of the United States, or any branch or department thereof, or any corporation in which the United States of America is a stockholder." 40 Stat. 1015. This statute was amended in 1934 to prohibit destruction as well as stealing of such property, 48 Stat. 996, and again in 1938, 52 Stat. 198. The final version of section 641 was enacted in 1948 as a consolidation of these two provisions. *See* 62 Stat. 725. While the legislative history does show the statute was intended to cover only property of the United States, rather than private property, the issue of what is property of the United States is not clear.

8. 31 C.F.R. §§ 315, 316.

upholding section 641 jurisdiction.[9] *Cf. United States v. Collins, supra,* (no section 641 jurisdiction where only government control was requirement that funds be kept in a special bank account at a specific bank).[10]

The question of whether the United States retains title in the bonds presents a more difficult question in light of *United States v. Miller,* 520 F.2d 1208 (9th Cir. 1975). In *Miller* a check, erroneously issued by the government as part of a federal grant, was converted by defendant. The defendant in that case argued that the funds which he was charged with embezzling no longer constituted property of the United States once the check had been issued and sent to a private organization. This defense was rejected for two reasons. First, the court held that "the check itself constituted a 'thing of value' of the United States, within the meaning of section 641." *Id.* at 1210. Second the court found that, as the check was erroneously issued, the right to the funds represented by the check had never passed from the federal government.

■ The facts of *Miller* are distinguishable from the present case. In *Miller,* the government retained a property interest in the money as the check was erroneously issued. Moreover, the property never passed into possession of the third party. Rather, the funds from the check were deposited directly into the defendant's personal account. Thus, the theft occurred while the property still belonged to the government.[11] In the present case, however, the

bonds were stolen from the private possession of third party owners. Thus, the property no longer belonged to the government. *Cf. United States v. Collins, supra.* (stolen warrant belonging to city not property of the United States); *see also United States v. Freeman,* 443 F.Supp. 288 (N.D.Cal.1977).

The government, however, relies upon the holding in *Miller* that the check itself was a "thing of value" of the United States within the meaning of section 641 and specifically the language that "[w]hen the drawer is the Government, it is the Government's piece of paper and the thief has stolen the property of the Government and of the person he has convinced to make payment." *United States v. Miller,* 520 F.2d 1208, 1210 (9th Cir. 1975) *quoting United States v. Collins,* 464 F.2d 1163, 1165 (9th Cir. 1972). The United States argues that the savings bonds at issue here are similarly the government's pieces of paper and as such provide the federal property interest necessary to sustain defendant's conviction.

■ Although the language of *Miller,* taken by itself, would appear to suggest such a result, the issue is less certain upon closer scrutiny. There are literally millions of pieces of paper issued by the government. To hold that the mere issuance of a paper by the government provides the necessary federal interest for section 641 jurisdiction would, in my view, extend section 641 far beyond the boundaries intended by the *Miller* decision.[12]

---

9. *See e.g., United States v. Johnson, supra,* at 846 (statutes and regulations manifest congressional intent that property be utilized under "strictest of supervision"); *United States v. Evans, supra,* at 472 ("ultimate federal supervision and control are virtually complete"); *United States v. Maxwell,* 588 F.2d 568, 572 (7th Cir. 1978) (statute indicates congressional intent that United States retain "financial interest" in property).

10. *United States v. Johnson, supra,* at 846.

11. In a similar manner thefts of the United States treasury checks have given rise to convictions under § 641 where the check was stolen *before* delivery. *See United States v. Lee,* 454 F.2d 190 (9th Cir. 1972); *Clark v. United*

States, 268 F. 329 (6th Cir. 1920); *United States v. Edwards,* 473 F.Supp. 81 (D.Mass. 1979).

12. As an example of the implications of such a holding, defendant cites 18 U.S.C. § 1361 which makes it a crime to "wilfully injure or commit any depredation against any property of the United States" and which shows legislative origins in common with section 641. 48 Stat. 996. If property is the government's merely because the drawer is the government, a person could literally be prosecuted for destroying their own treasury check. Such an absurd result indicates that something further is required for the piece of paper to take on a federal character.

Rather, *Miller* and the other cases interpreting section 641 imply that the pieces of paper involve the risk of loss of the government. This interpretation would be consistent with the holding in *Collins* that the government suffer some actual loss in any action brought under section 641. Moreover, another essential element of section 641 involves valuation[13] which in the present case would be the face value of the bonds. Thus, it is what appears on the paper that is the loss of significance to the government, rather than the mere loss of a piece of paper whose intrinsic value may amount to nothing.

Here the only potential loss to the government is the cost of replacing the stolen bonds. This is insufficient to provide the necessary federal nexus constituting a "thing of value of the United States."

 Alternatively, the government argues that the bonds fall within the scope of the statute as "records" or "vouchers" of the United States pursuant to dictum in *Clark v. United States*, 268 F. 329 (6th Cir. 1920). *Clark* involved a case where the indictment itself charged theft of a "voucher or pay check." 268 F. at 332. The *Clark* court explained that the pay check in that case would be a record or voucher "if in fact it was intended at the time it was written to serve the dual purpose of voucher and record of payment." *Id.* Aside from the fact that here no such charge was made in the indictment, I find that it would strain the plain meaning of the terms of the statute to hold that savings bonds in the possession of private owners were intended to be records or vouchers of the United States. Criminal statutes must be strictly construed and should not be expanded beyond the plain meaning of the words. *Chappell v. United States*, 270 F.2d 274, 278 (9th Cir. 1959); *United States v. Freeman*, 443 F.Supp. 288, 290 (N.D.Cal.1977). Consequently, the government's "record or voucher" argument must be rejected.

Under the circumstances of this case, the property at issue has an insufficient federal nexus to support the conviction. I conclude that the savings bonds at issue were not a "record, voucher, . . . or thing of value of the United States" as required under section 641. Fleetwood's *motion for judgment* of acquittal must be granted and his conviction and sentence are vacated.

So ordered.

---

**13.** Section 641 provides different penalties if the value of the property at issue exceeds $100. "Value" is specifically defined as "face, par, or

market value, or cost price, either wholesale or retail, whichever is greater."