UNITED STATES of America, Appellee,

v.

**Paul BAUER, Appellant.**

No. 82–5346.

United States Court of Appeals,
Fourth Circuit.

Argued May 13, 1983.
Decided Aug. 2, 1983.

Fred Warren Bennett, Federal Public Defender, Baltimore, Md. (Richard B. Bardos, Law Clerk on brief), for appellant.

Robert B. Green, Asst. U.S. Atty., Baltimore, Md. (J. Frederick Motz, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before RUSSELL, PHILLIPS and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Paul Bauer was convicted, following a non-jury trial in the United States District Court for the District of Maryland, of a violation of 18 U.S.C. § 641. In its entirety, that statute provides:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both. The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

The indictment charged only, in accordance with the second paragraph, that "Bauer did knowingly and wilfully conceal and retain a thing of value in excess of $100.00 of the United States ... that is ... 234 ... Series E United States Savings Bonds having a face value of $7,350.00 with intent to convert them to his use and gain, ... know[ing] that said items had been embezzled, stolen, purloined or converted."

The consequence is a tortuous trail through words to determine whether the evidently bad acts of Bauer fell under paragraph 2 of § 641 as charged, or whether they at most amounted to some other crime for which Bauer was not indicted.

Between December 15, 1978 and January 2, 1979, breaking and entering occurred at the Baltimore, Maryland residence of Mr. and Mrs. Leo William Shifflett. Stolen were 234 United States Series E Savings Bonds having an aggregate face value of $7,350.00 registered in the names of the Shiffletts or of their daughter. The Shiffletts, in June 1979, having provided an indemnity bond, obtained replacement bonds. Thereupon the stolen bonds became the property of the United States.[1]

Bauer on August 27, 1982 attempted to sell the stolen bonds. On apprehension he

---

1. 31 C.F.R. § 315.28 (1982):
*Recovery or receipt of bond before or after relief is granted.*
(a) *Recovery prior to granting relief.*
   *   *   *   *   *   *
(b) *Recovery subsequent to granting of relief.* A bond for which relief has been granted is the property of the United States and, if recovered, must be promptly submitted to the Bureau of the Public Dept., Parkersburg, West Virginia 26101, for cancellation.
Bauer stipulated that:
Once the replacement bonds were delivered to Mr. and Mrs. Shifflett, the stolen bonds became the property of the United States pursuant to 31 C.F.R. Section 315.28(b).

acknowledged having stolen them from the Shifflett residence.

## I

First Bauer contends that the bonds, having been replaced, were not things of value. Their status as things concealed or retained by Bauer certainly could be inferred, he having had them when they were stolen and still three and one-half years later when he attempted to sell them. The thief clearly knew them to have been stolen. The argument of Bauer centers on the claim that the bonds had no value and that, consequently, the Government suffered no property loss. The fallacy, however, is apparent in the plain language of the statute which defines value as: "face, par, or market value, or cost price, either wholesale or retail, whichever is greater." 18 U.S.C. § 641. Furthermore, Bauer's expectation that he could sell the bonds, and his attempt to do so, in the circumstances of the case,[2] belie the contention that they were without value or were worth not more than $100.[3]

Bauer also points to the fact that § 641 punishes concealment or retention of a "thing of value *of the United States*" (emphasis supplied), and emphasizes that the bonds when stolen were the property not of the United States but of the Shiffletts. However, concealment and retention continued up until the attempted sale in August 1982, a period lasting well beyond the time of the issuance of replacement bonds to the Shiffletts. Hence, while ownership shifted from the Shiffletts to the United States, in the course of the offense committed by Bauer, the status of the bonds as a thing of value remained undisturbed. The face value of the bonds did not change. Ownership, however, now was the Government's, no longer the Shiffletts'.[4]

Despite those substantial hurdles, Bauer has succeeded in locating authority to lend support to his position. *United States v. Fleetwood,* 489 F.Supp. 129 (D.Ore.1980). However, that case differs in an important, indeed a controlling, way. There the facts were extremely like those in Bauer's case. The charge, under 18 U.S.C. § 641, was concealing and retaining stolen United States Savings Bonds and Freedom Share Notes. The stolen bonds had been replaced by the Government and were never cashed. However, the district judge in *Fleetwood* never alludes to, far less relies on, the regulation spelling out the property interest arising in the Government upon replacement of bonds following theft. That presumably is because the regulation was not called to the judge's attention.[5]

Making no claim under the predecessor regulation, the prosecution in *Fleetwood* was forced to argue a concept of retained general governmental possessory rights in indicia of claims of others against the Government, an issue which we, in light of the pertinent regulatory language, need not, and do not, address.

**2.** Bauer negotiated a sale for $4,500 with an undercover Government agent.

**3.** *See United States v. Carr,* 706 F.2d 1108 (11th Cir.1983), a case brought to our attention after our opinion had been prepared and circulated, which effectively exposes the fallacy of Bauer's contention. *Carr* also convincingly repudiates the assertion, discussed *infra,* that there was no proprietary interest in the United States in stolen savings bonds.

If the value were not in excess of $100, the maximum sentence would be a fine of $1,000 or imprisonment of one year, or both. The sentence imposed on Bauer was five years, with the last 4½ years suspended.

**4.** Unawareness by Bauer that ownership had shifted to the United States did not affect guilt.

"Knowledge that stolen property belonged to the government is not an element of the offense. The sole reason for including the requirement that the property belongs to the government is to state the foundation for federal jurisdiction." *Baker v. United States,* 429 F.2d 1278, 1279 (9th Cir.1970), *cert. denied,* 400 U.S. 957, 91 S.Ct. 354, 27 L.Ed.2d 265 (1971).

**5.** The regulation in its current form was not published for notice and comment until September 26, 1980, 45 Fed.Reg. 64,091 (September 26, 1980), whereas Fleetwood's possession and hence his retention and concealment, terminated on March 31, 1979. The predecessor regulation did, however, provide: "A bond which is recovered after relief therefor has been granted belongs to the United States...." 31 C.F.R. § 315.28 (1979).

From the prosecution's point of view, a helpful aspect in *Fleetwood* lies in the conclusion of the district judge that the crime was a continuing one, not confined in its occurrence to 1970 when the thefts occurred, but running on uninterruptedly until March 31, 1979. Thus, from and after the replacement of the bonds stolen by Bauer, and accompanying assumption of full property rights therein by the Government in June 1979, until August 27, 1982, a continuing crime against the Government was taking place, regardless of whether any such crime was made out for the period prior to June 1979.

Furthermore, Fleetwood accepts that valuation, even though the Government had replaced the bonds in the hands of the victims, was determined by the face value of the bonds. *See* 489 F.Supp. at 134.[6]

## II

■ Bauer alternatively asserts that the two paragraphs of 18 U.S.C. § 641, one designed to punish embezzlement, theft, purloining or conversion, the other receipt, concealment or retention of property of the United States, are to be construed in such a way as to bar altogether the charging of the thief, whether or not he has ever been prosecuted for theft, with the crime of receiving, concealing or retaining. Bauer relies on the common law rule prohibiting conviction of a single individual, on the basis of the same events, for both (a) theft and (b) receiving stolen property.[7] It may well be, but, fortunately, we are not called upon to decide, that the common law concept contemplates only a receiving offense commencing contemporaneously with the theft and asportation. Here, there was a substantial intervening period between theft on a day or days between December 15, 1978 and January 2, 1979, on the one hand, and the replacement of the stolen bonds by the Government in June of 1979, on the other.[8] Furthermore, even if the bonds remained throughout, for our purposes here, things of value of the United States, concealment or retention is not necessarily identical with receiving.[9] We per-

---

**6.** *Cf. United States v. Alberico,* 604 F.2d 1315, 1321–22 (10th Cir.1979).

**7.** W. LaFave & A. Scott, *Criminal Law* 689 (1972).

**8.** The time passage consideration is one that should not be lost sight of. In *Fleetwood, supra,* nine years had elapsed before the thief was identified. The statute of limitations is five years. 18 U.S.C. § 3282. Yet the attempt to dispose of the stolen property for gain occurred only on March 31, 1979. Upon discovery of his identity, he was promptly indicted, the district court decision having been rendered on April 29, 1980. It would not have yielded a bizarre result to hold that, first, the defendant, as the one who stole the bonds, was insulated by the lapse of five years from conviction for theft under paragraph 1 of 18 U.S.C. § 641, and, second, that he, being the thief, because of mutual exclusivity, could not even be charged under paragraph 2 of concealing and retaining, which he had continued to do until a very recent time before his indictment and prosecution.

Indeed, if Bauer is correct, as he might well be, that until the replacement bonds were issued there was no sufficient property interest in the United States to support a theft conviction, *see Fleetwood, supra,* he will have discovered a glaring loophole. From the very outset he could not be convicted under paragraph 1 of § 641 for theft because of the absence of a jurisdictional predicate, namely, a thing of value of the United States. Also, from the outset, he would, as the thief, not fall within the terms of § 641 paragraph 2.

**9.** It is to be noted that 18 U.S.C. § 641 speaks in the alternative: "Whoever receives, conceals *or* retains ..." (emphasis supplied), and that only concealment and retention were charged in the indictment. *See,* however, *United States v. Sellers,* 520 F.2d 1281, 1286 (4th Cir.1975), *vacated,* 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 728 (1976), *modified,* 547 F.2d 785 (4th Cir. 1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977) ("We are unpersuaded by the Government's proffered distinction between 'receiving' and 'possession' ...."); *see also United States v. Minchew,* 417 F.2d 218, 219 (5th Cir.1969), *cert. denied,* 397 U.S. 1014, 90 S.Ct. 1246, 25 L.Ed.2d 427 (1970):

> The holding [that a person cannot be convicted and punished for both stealing Government property and for receiving the same property] probably includes concealing and retaining the stolen property.

We are not presented, however, with an attempt to convict Bauer of *both. Minchew,* for our purposes, confirms that the Government may elect to charge, and obtain a conviction for, *either* theft or for receiving, concealing or retaining. That is to say that the crimes are not mutually exclusive. They are only noncumulative. *Cf. Sellers, supra,* at 786:

 

ceive no indication that Congress, by silence, meant to import into the statutory framework of 18 U.S.C. § 641 the common law concept.[10]

The person who steals a government truck may *alternatively* be convicted of receiving, concealing and retaining the vehicle. *United States v. Trzcinski,* 553 F.2d 851, 852 (3d Cir.1976), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1977). The court for entirely convincing reasons "opt[ed] for a literal, rather than a historical reading of the statute" and decided that "a defendant may be convicted for the receipt and possession of stolen goods when the evidence discloses that he was in fact the thief."

█ Acquittal of theft does not preclude conviction, on the basis of *autrefois acquit,* of the crime of receiving and retaining the stolen property. *Cf. Phillips v. United States,* 518 F.2d 108, 110 (4th Cir.1975) (*en banc*), *remanded,* 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 728 (1976), 538 F.2d 586 (1976).

The case which Bauer asserts compels a contrary result is *Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961). However, it only determined that conviction *both* for theft and for receipt of the stolen goods was impermissible.[11] The holding was that conviction on *either* charge was permissible. *Trzcinski, supra,* at 853. That is quite different from Bauer's contention that only one of the charges would properly lie in the first place.

[*United States v.*] *Gaddis* [424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976)] provides that instructions may be given on both the theft and the possession counts, but that convictions may not be sustained on both counts arising out of the same set of facts.

10. The principle underlying the concept that a thief would not "receive" stolen goods from himself "is based either upon the theory of avoiding the infliction of a double penalty or upon the philosophic consideration that a single act may not constitute both the larceny and the receiving.... [T]he question [under 18 U.S.C. § 641] is one of statutory construction, not common law distinctions." *United States v. Trzcinski,* 553 F.2d 851, 853 (3d Cir.1976),

Accordingly, the judgment is AFFIRMED.

*cert. denied,* 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1977).

In all events, the critical word is *both.* The Government has not sought to charge Bauer with theft. Upon affirmance of his conviction for concealing and retaining, double jeopardy will preclude a prosecution for theft, because of the dual punishment implications.

Double jeopardy would not, however, preclude prosecution under a two-count indictment charging (a) theft and (b) retaining and concealing. It would simply forestall convictions under both. *Gaddis, supra,* 424 U.S. at 550, 96 S.Ct. at 1027.

11. Such is also the holding in *Phillips, supra.*